Merrick Garland Good morning, may it please the court. I'm going to reserve four minutes for rebuttal and I'd like to keep track of my own time. My name is Eric Kindu. I'm here on behalf of Petitioner Ruel Ballesteros. Can you keep your voice up just a little bit? It's nice and soft. Edmund and his minor daughter are here with us today. This petition involves three legal errors. Those legal errors individually are reason to grant the petition a remand. Collectively, the legal errors show that the BIA and the IJ did not give the reasoned consideration that Ruel was due in his petition. The first is an error regarding CAT. The agency said in a summary way the legal standard, but did not explain why or connect that legal standard to any of the facts in the record. So you're talking about the CAT here? Correct. All right. Well, let me ask you this. You know, obviously, arguably, you could say it was sort of boilerplate, but it doesn't exist in a vacuum because they've already gone through the analysis of past persecution, the likelihood of future persecution, all of those things. So what is the relief that your client was asking for? Asylum, right? Correct. And withholding? Correct. And then CAT, right? So if you don't often, if you don't qualify for asylum and withholding, then there are certain circumstances where you could qualify for CAT, but the analysis of those sort of flows over. So I don't see it as a complete vacuum there. Correct. And I understand that, Your Honor, but this court has said that the claims are analytically separate. And I understand that you can refer potentially to factual findings that the IJ made or the BIA made with regarding the asylum claims. However, that did not occur here. I'm sorry. Finish. Yeah. The case law says that the BIA must explain with clarity and particularity the reasons for denying CAT. In the terse section describing CAT relief, the BIA did not at all refer to any factual findings. They simply recited the legal standard. The same with the IJ. Well, that's all I was going to ask you, so thank you for getting that. I tend to agree with you that the BIA's description on its face is rather sparse. Why is the IJ's description, if we were only looking at that, insufficient? I also believe that's insufficient. It, again, does not state any findings of fact that it made prior in its opinion. It simply recites the legal standard. And the BIA even referred to the IJ's page where it cited the legal standard. It did not refer to the IJ's factual findings. Well, that's my question. I understand your concern with the BIA's opinion. I'm just trying to, if we were merely, the IJ did make a lot of factual findings and apparently looked at all the evidence as close as I can tell because he says so and recounts all the evidence at great length that was submitted. So is the problem here that the BIA didn't sufficiently recount what the IJ had found or is it a problem with the IJ's findings? A couple of things with that, Your Honor. I'd say, first, putting aside the argument we make with fear of future prosecution with the BIA not addressing it. Yeah, and I want to get back to that, so I want to give you a chance to get back to that. I want to say the IJ's findings, you said that they presumably considered everything in the record, and that's kind of the second part of the CAC claim, is we believe that there is evidence in the record that the IJ did not consider. For example, the IJ cited a 2010 article that said that one of the perpetrators was a subject of a criminal complaint in the Philippines. So putting semantics aside, there was country conditions reports that said the Philippine government does not prosecute human traffickers, continue to prosecute human traffickers. So even if there was a subject of a criminal complaint, there is also highly probative evidence in the record that... My difficulty with that, and I want you to get to the other part, is that the IJ is not recounted, is not required to recount every piece of evidence. He says he's considered the country condition reports. He just hasn't specified the part of the reports that you now emphasize. So at least from my perspective, if we were looking only at the IJ's decision, I'd have a hard time with your CAC claim. I understand your argument with the BIA's decision, and I think you've made it. But let me turn to the withholding and asylum. And here's a question that I need some help with. You didn't argue to the BIA that the IJ had erred in not finding past persecution. As I read, there's nothing in the brief to the BIA. It's all about a well-founded fear of future persecution. Am I right? I would disagree with that, and also I'd point to the BIA's actual opinion. No, but I'm not asking you what the BIA said. I'm asking you whether you argued to the BIA in your briefing at any point, I can't find it, that the IJ had erred in not finding past persecution. Or that your client could relocate. I think neither of those things were argued. I believe that in the brief below, they did argue that the past persecution finding was erroneous. To the BIA? To the BIA. Maybe when you sit down, I can look back. It would be helpful if you could point to where you did that. For the past persecution finding. Yeah, or where the part was. And I will say that they did not challenge the relocation finding. I don't believe that they argued in front of, to the BIA that the relocation finding was erroneous. Let me then ask the question that follows, and my premise may be wrong. You may be able to point this out. If the past persecution finding, which you admit is not, a different finding is not compelled by the record, if the past persecution finding is correct and is upheld, it would then be your client's burden to show, even if he just otherwise established a fear of future persecution, the inability to relocate, right? So there's three, I think, outcomes. One is a finding of past persecution, which would push the burden. No, no, but my question was, let's assume there's no finding of past persecution. I understand if there is one, the burden may change. Correct. And so on the fear of future persecution, the burden, if it's government sponsored, the burden is with the government. There's a presumption that the government... Right, right. Okay, so now we've gotten to the point. The IJ finds that these were private actors, not government sponsored. The BIA affirms his findings with respect to relocation, without digging down deeply onto that. Is that enough to establish for us that the record would have to compel a different finding before we could find that these were government sponsored actors? Well, I think the legal error that we're arguing is that rule raised this, the challenge to the factual finding that the persecution would not be sponsored by the government. Rule challenged that to the BIA. The BIA did not address that. But it didn't address it, but it did affirm the relocation finding. It did say, and it seemed to be pretty clear that the burden was on your client to establish relocation. Is it implicitly addressing it? The BIA would have to implicitly find that the burden was with rule and that he did not make it. But I think kind of throughout our briefing, here's the point. We're guessing what the BIA did here. The whole purpose of the law requiring the BIA to state its reasons with particularity and clarity is so that we can conduct a meaningful review here. We're not going to say, well, what did the BIA do? What did they assume in coming to this conclusion? I'm looking at, I guess it's page two of the BIA's decision. And it says, as the respondent has not shown past persecution, which is what I ask you to assume, he is not entitled to a rebuttable presumption of a well-founded fear of future persecution. And then it goes on to talk about the respondent has not demonstrated that he is unable to relocate. It seems to me that they expressly place the burden on your client. Yes? So first, just because they did not find a past persecution doesn't foreclose the possibility of establishing a fear of future persecution. No, no, I agree. I agree. But isn't it pretty clear that they place the burden on your client to establish the inability to relocate? By concluding that he did not meet his burden, or by concluding that, by reporting the IJS findings, they must have assumed that the burden was Ruel's. Our challenge, again, is to the BIA's lack of considering Ruel's challenge to the government-sponsored finding. Hopefully that answers your questions on that. Speaking of the past persecution claim, we argue on appeal here that the BIA did not consider the totality of the circumstances in everything that happened in the past. And that is evident by their statement that he only suffered past persecution from the threats from the U.S. and the U.S. The BIA didn't say your client hadn't established a well-founded fear of future persecution because of threats or events. It found that he hadn't established it because he hadn't shown that he couldn't relocate. This is on the past persecution claim, not the future persecution claim. Okay, but on the past persecution, that's where I'm coming back to. You do agree that the IJ mentioned all those things when he, in his long recitation of facts, he says I've taken all this evidence into account and I find no past persecution. The IJ's conclusion was a little different than the BIA's. Okay, so your problem with the BIA's is that it's based on the notion that not all the events occurred in the Philippines. Correct, and it's a little different. We're not arguing that there's no requirement for some of the events to occur outside the United States, but the IJ found that all events together did not rise to the level of persecution. The BIA's finding was a little different. They held that just because the events that it looked at, the threats, occurred in the U.S., therefore that could not establish a finding of past persecution. So, our argument is... It's the BIA's finding that you're attacking, you're not the IJ. Correct, correct, yeah, and so what we think is that the BIA should have looked at everything and concluded that all those events rose to the level of past persecution, and we cite some cases that say each of the events that happened and occurred in the Philippines could... Can you just quickly run through the things that happened in the Philippines? Correct, yeah, so I think we lay them out in our reply brief near the end page 14. So, debt-based coercion when he was first trafficked. They granted him visas and other documents that he took on debt. They threatened his family, and his mother fled her home, and his property was taken in the Philippines. Do any of those events... I know you want to save some time for rebuttal. They may establish a well-founded fear of future persecution, but do any of those events amount to persecution themselves? There is caseload depending on the egregiousness of those events. I'm not sure if individually here each one would, but that's not what we're arguing. We're not arguing that the IJF... What is your best case of past persecution? There's this case, and we looked for a more analogous case, Madrigal. It's a 2013... We cite it in our briefs, where it was an ex-military member, left the military, was threatened in Mexico, was threatened a bunch, came to the U.S. While his mom and family was still in Mexico, they received a written note that was threats. He was in the U.S. at the time. The IJF looked at all the circumstances and said that that did not rise to the level of persecution, and I believe this court reversed because they did not... Wasn't that a well-founded fear of future persecution case? I believe the discussion I'm referring to was with regard to past persecution. Take a look at it. So is your argument that all of this taken together establishes past persecution, or just that the BIA erred by not discussing it? Yeah, we're not challenging the IJF's determination that everything together did not rise to the level of past persecution. The BIA did not consider it in totality, and that is evident. That's the error. And that's the error, correct. Yeah, that's the legal error, and that has been found to be a legal error. So if the BIA had said, we affirm the IJF for the reasons he gave in his decision, you wouldn't have a problem as to past persecution? I would say that that would be affirming the IJF's conclusion that the events in totality did not rise to the level of persecution. Well, but the IJF did look at everything and said, I don't think any of this arises to... Correct, and I think that the BIA independently... Must use those words. Yes. Yeah, okay. Thank you. And I'd like to reserve the rest of my time, and I will try to find those citations for you. Thank you. Good morning. Good morning, Your Honor. May it please the Court, Dan Goldman on behalf of the Attorney General. The government asks this Court to uphold the agency decision and deny the petition for review. There are three issues before this Court, three agency findings, past persecution, well-founded fear, future persecution, and cap. With regard to past persecution, the Board made a very straightforward finding based on the law that the past persecution has to occur in the home country, in the Philippines in this case. It did not. Therefore, Mr. Ballesteros didn't establish past persecution. The evidence does not compel reversal of that. The government urges this Court to uphold that finding. With regard to well-founded fear, well-founded fear is a complicated analysis. Can an applicant establish a well-founded fear of future persecution on account of a protected ground? Even if a petitioner, even if Mr. Ballesteros could establish those things, the regulation and this Court recognize that if the individual does not establish that he cannot relocate, he doesn't establish a well-founded fear. This Court made that clear in Duran-Rodriguez. The regulation makes that clear. The predicate to that is a finding of no past persecution. We have that here, and a finding that the individual fears private actors. Could you stop there for a second? I know you want to get on to Kat, too. But as to that, I think the IJ made a finding of no private actors, of no public actors, of no government-sponsored actors. Did the BIA address that issue at all? I don't believe they say that expressly, Your Honor. And this is the argument your friend is making, so I want to hear what you have to say about it. He says, well, maybe the IJ was right, but the BIA has an independent duty to review it, and they never addressed that issue, and there's at least some evidence from which a contrary conclusion might be reached, although it doesn't seem to be very strong. Why is that enough? It's enough in this case, Your Honor, because the conclusion from the Board affirming the immigration judge's relocation finding can't be reached unless they make the first two predicate findings, no past persecution and fear of private actors. So you think it's an implied finding? Absolutely, Your Honor. That's the government's position in this case. And I would also highlight for the Court, the arguments from Mr. Ballesteros have evolved. In the immigration court, before the Board, as Your Honor was discussing earlier, he doesn't argue past persecution, and so he raises that argument now. We're not making an exhaustion argument. We're not, Your Honor. Because the Board reaches it. Absolutely. Both the immigration judge and the Board reach that, so it's considered exhausted. Simply pointing out, he didn't make that argument. He's making it in a lot more detail before this Court. See, in my mind, and that's why I wanted to ask the question, and I want your friend to try to be able to address it, it explains to me why the past persecution finding isn't all that detailed at the BIA level. It's really not contested. What they're worried about is, okay, given that, how do the burdens lie with respect to withholding? Absolutely, Your Honor. I think that's what there are a few main points in this case. That's one of them. Because he didn't raise a past persecution argument, either in his opening brief, in the closing arguments in the immigration court, he didn't raise it again to the Board, the immigration judge and the Board both recognize that what happened here happened in the United States. It did not happen in the Philippines. What happened in the Philippines was he was defrauded. That's part of why he got a T visa, was he was defrauded. One of the other ways to get a T visa is to show coercion or threats. There's no evidence that he was coerced or threatened in the Philippines. And if I could address briefly the argument made by counsel, he was talking about debt-based coercion. I believe it's in the reply brief at page 14. They rely on the Zhang case. Two points to make there. Number one, this is not a case of debt-based coercion, factually. Number two, the Zhang case is distinguished completely from this case. In the Zhang case, it's a Chinese population control one baby case. The petitioner is one of three children. Her family, by having the second and third child, violate the Chinese population control policy. The family is fined. The father is forcibly sterilized. He's too weak to work. They can't pay the fine. They're evicted from their home, I believe. Their property is confiscated. And the applicant, the petitioner before this court, was not allowed to go to school because of the fine. That's debt-based coercion. With all due respect to what Mr. Ballesteros happened to happen to him in this case, he wanted to come to the United States. He wanted to make a living. But that's not debt-based coercion. No one forced him to go through the agency. No one forced him to do any of that. In fact, it was a family member who recommended this agency. There was no debt-based coercion in this case. Can I ask you to turn to the Catt claim? Yes, Your Honor. Let me tell you what bothers me about the government's position, and maybe you can address it. Your brief says the Catt claim fails for the same reason that the other claims failed, which is to say the absence of a government actor. But we don't need a government actor in a Catt-based claim. We just need an actor that the government is unwilling or unable to control. And the only basis that the BIA specified for turning down the withholding claim was the relocation issue. It never got to whether the threats were serious enough to establish a well-founded fear of future persecution. So what we have is a BIA decision based on inability to relocate, which is relevant but not dispositive of a Catt claim, and a brief from you all that says the absence of a government actor is dispositive, and then a BIA decision which I think we all can admit is rather sparse. Given all that, why shouldn't we grant the petitioners the Catt claim? A few points to make in response, Your Honor. Obviously, we'd rely on the arguments in our brief, but specifically in discussing the Catt claim, what the board says is that Mr. Ballesteros has not shown that it is more likely than not he will be tortured. So that's part one of a Catt analysis. By or at the instigation of or with the consent or acquiescence of the Philippine government. That's what the regulation says. Yes, Your Honor. But it's very conclusory. I would agree. Why shouldn't we remand it to get a specific statement of the reasons for that denial? Your Honor, if the court believes that the board needs to further explain, based on the evidence that was not in dispute, remand is an option. The government doesn't believe that's necessary here, partly for some of the reasons that were discussed before, that a decision is not evaluated in a vacuum. What the board does here is to say, we agree. We affirm the immigration judge's decision. The immigration judge does a much longer explanation, discussion of the facts. The immigration judge specifically talks about the report that's in the record. I believe it's at 363, but it's in the record multiple times, talking about the neutralization of the trafficking ring in this case. The very individuals that Mr. Ballesteros was afraid of, the Philippine government working with the United States government, neutralized that trafficking ring. Mr. Ballesteros would have this court look, if not only, certainly more, at the country conditions report. The government doesn't dispute what's in those country conditions report. Trafficking is a problem. What we have in this case is the somewhat rare circumstance where the actual individuals that Mr. Ballesteros fears, there's evidence regarding them. In most cases, this court is not going to find that in a country condition. But what you're saying, I think, is the record doesn't compel. That's part of it. That's, I don't, I think, I would agree with that. I'm not sure anybody could dispute that the record doesn't compel a finding that he's probably going to be tortured if sent to the Philippines. I've got a different question. My question is how do I know what the BIA did? And we are reviewing the BIA's decision here. They didn't adopt the IJC. They did not adopt. So we're reviewing the BIA's decision. The BIA, and to the extent that they've agreed with the immigration judge, we believe the court can look to that to try and answer your question. The court needs some assurance that this case was not glossed over, that there was not a misunderstanding, that evidence wasn't missed. Looking at the case law that Mr. Ballesteros cites, he's citing cases where immigration judges or the board missed facts, missed evidence, misconstrued, misunderstood evidence. There's no indication, none, in this case, that either the immigration judge or the board didn't know what was going on, didn't know what Mr. – Most of the time, if you deny asylum and deny withholding, it's pretty automatic that you don't meet CAT. But there are a few – there's a small group of cases where people can get CAT and not asylum and not withholding, right? Yes, Your Honor. As this court noted, I don't have the exact site, but the Kamalthas case from years ago, the nexus requirement that exists for asylum, the applicant has to show that the fear, the past persecution or the fear of future persecution is on account of a protected ground. That nexus requirement does not apply to a CAT claim. But in this case, some of the same reasons that applied to the asylum and withholding claim, the lack – I shouldn't say lack – the passage of time, which the immigration judge specifically noted, talked about how Mr. Ballesteros was threatened, his family received threats, but by the time he's in immigration court in 2020, it's been eight years since those threats were made to him or to his family. That passage of time undercuts the objective reasonableness of his fear, of the likelihood of torture. In addition, the immigration judge specifically discusses at page 66 of the record the news report that was mentioned earlier that says the Philippine government has neutralized the trafficking ring. The Philippine government has neutralized the very trafficking ring, the individuals that he fears. In order to meet the second prong for CAT, government acquiescence, consent, willful blindness, he would have to show that the Philippine government isn't going to do that. Well, in this case, this court has the benefit of very specific evidence that says the individuals that he fears have been investigated, prosecuted by the Philippine government. He can't meet that second prong of the CAT requirements. The fact that they kind of tend to get less explanatory as you start with asylum, then it gets a little less, because he doesn't qualify for asylum, then he necessarily doesn't meet the higher burden of withholding, and then you get down to CAT, and then it's very conclusionary here. So if it looked more like the record would be a situation that would compel a finding of CAT, would this be too conclusionary? The government would believe that he would have a much stronger case if all of that evidence wasn't there. If I understand Your Honor's question. I guess that's what I'm saying. In this case, Your Honor, the evidence still has to compel reversal. As I noted at the outset to Your Honor's question, if the court believes that that further explanation by the board is necessary, remand is an option. If this case goes back on remand, I cannot predict exactly what the board or the immigration judge would do, but the evidence doesn't change. The fact that at that point, it would be 10 years, give or take, from when the last threats were made. Does the evidence have to compel a contrary conclusion for us simply to say the board didn't sufficiently explain it? I think those are parallel. Well, because then they wouldn't ever have to have an explanation if the evidence were sufficient. No, and I don't mean to suggest that, Your Honor. I'm simply saying that in this case, if this court says, well, there's not a big explanation here, which the government agrees with, but then we look to the overall decision and look to both the immigration judge's decision, which the board affirms, where the immigration judge discusses all of the evidence. There's no indication that the immigration judge misconstrued the evidence, misunderstood the evidence, didn't know what this claim was about, and the same would apply to the board. In those situations, the government understands where this court has, understandably, raised those concerns. When an immigration judge gets a fact wrong that's relevant to the ultimate decision, that's a problem. Didn't happen here. When the board doesn't understand a claim that's made on appeal, that's a problem. That didn't happen here. So with regard to the Catt decision, this court could send it back. I'm stopping just short of making a futility argument. But you are. What you're saying is it's so unlikely of success on remand, given the record, that their sparse explanation was sufficient. That really is your argument, isn't it? I'll defer to your phrasing of that, Your Honor, but I'm not disagreeing with it. Right, but then ultimately that does get us to the point where the BIA just doesn't have to explain itself in these cases in terms of Catt because, you know, in a lot of them, you're going to be able to look at the record, or we could look at the record and say, look, it's futile, no reason to send it back. That's not what I read our case law as saying. We've held that you can't have a boilerplate statement. So I just, I guess I'm trying to figure out, like, why is this case different than those cases where we said you can't just do boilerplate? A couple of points there, Your Honor. I think, for lack of a better term, it's a spectrum. If the immigration judge and the board say, I've looked at this case, denied, cite the boilerplate, no discussion of evidence, that's going to be a problem. This case is different because you have an immigration judge who does, respectfully, a good job of discussing the relevant evidence, both for withholding and asylum, but also for Catt. And that gets to Judge Callahan's question earlier where there's a distinction between Catt and asylum. The distinction is nexus. Nexus isn't an issue here. The immigration judge didn't deny, and there's no denial here of Catt based on the lack of a nexus. So if that had been a situation, that's also somewhere on that spectrum, all of which goes to this court's ability to look at a decision and say, what's the evidence? Did the immigration judge and the board understand the evidence, understand and appreciate the nature of the claim? Where this court has sent cases back is where there are bigger concerns, where immigration judges and the board err. I see my time has expired. If I could continue briefly, Your Honor. That's with regard to Catt. If I could have just even 30 seconds, I wanted to address a point on the asylum claim, Your Honor. The claim has evolved from Mr. Ballesteros. Before the agency, before the immigration judge, before the board, he argued that he feared private actors. His claim is changing somewhat before this court, understandably, because if he fears the government, if it's government-sponsored persecution, the burden shifts. The problem is he didn't argue that to the immigration judge and the board. He argued that he feared private actors that the government of the Philippines was unable and unwilling to address. Throughout his brief to the board, specifically at pages, I believe, 10, 11, 12, 16, he says, unable and willing. I am afraid because the Philippine government will not help me. That's not a fear of government, direct government, or government-sponsored persecution. It's a fear of private actors that the government is unable and unwilling to control. In this case, no past persecution, fear of private actors. He did not testify that he could not relocate. And as counsel for Mr. Ballesteros acknowledges, he didn't challenge the relocation finding when it came up on the board. For all of those reasons, Your Honor, the government asked this court to uphold the agency decisions. Thank you for your argument. Thank you, Your Honor. All right, you have two minutes for rebuttal. Thank you. So I looked through the brief below, and I did not find a challenge, an express challenge. I would have maybe said it differently, too, past persecution. The brief does mention throughout the brief the facts that potentially would have supported a past persecution. What we did cite in our reply is the places where rule challenged the factual finding of the IJA that the persecution was not government-sponsored. He mentions it in a couple different places there. I want to pick up on some things that my friend mentioned. One, he said that this is not government-sponsored, but then he said this is a claim potentially where the government is unable or unwilling. That's exactly what CAT requires. And he also continually kept mentioning that this human trafficking ring was neutralized, and this doesn't really directly bear on our legal arguments. But I will note that throughout the brief he mentions that one of the perpetrators was passed away, and the citation to the record on that does not support that assertion. And for CAT, even if it was individual actors, for CAT, it only has to be the government has to be unable or unwilling to support relief, not an action actual by the government. And as for the point that the government kept making, saying that the IJA did not misconstrue the factual record, the IJA did not make any errors, I will submit that the IJA did not consider, again, that key point of evidence on the country conditions, that the government of the Philippines does not continually prosecute human traffickers. And it's not far-fetched to think that the government who are getting kickbacks from or bribes from these traffickers and one of the perpetrators was even working in government, that they would turn a blind eye to potential persecution of individuals. So thank you, Your Honors. Thank you both for your argument. This matter will stand submitted. Oh, yes. Oh, thank you. Judge Hurwitz reminded me that we have a pro bono lawyer here, and the court, we appreciate everyone that comes to argue, and that includes the government, but when you argue a pro bono case that we especially like to express our appreciation of that because it gives the court a better opportunity to have the matters briefed and properly argued before the court so that we can make a fair decision for both sides. So thank you both for your argument here today, and in particular thanks for handling pro bono matters for the court.
judges: CALLAHAN, HURWITZ, THOMAS